Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| GEORGINA DE LOURDES VEGA COLLAZO, ARLIVON DEL CARMEN VEGA COLLAZO Y LAURA ELENA VEGA COLLAZO<br><br>**Recurridas**<br><br>V.<br><br>LUIS ANTONIO VEGA COLLAZO<br><br>**Peticionario** | TA2025AP00354 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de FAJARDO<br><br>Civil. Núm. CA2024CV04255 Casos Consolidado(s): FA2025CV00342<br><br>Sobre: DIVISIÓN O LIQUIDACIÓN DE LA COMUNIDAD DE BIENES HEREDITARIOS |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 22 de octubre de 2025.

El 19 de septiembre de 2025, el Sr. Luis Antonio Vega Collazo (señor Vega Collazo o el peticionario) compareció ante nos mediante *Apelación*[1] y solicitó la revisión de una *Sentencia Parcial* que se dictó el 1 de julio de 2025 y se notificó el 3 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI). Mediante el aludido dictamen, el TPI desestimó, sin perjuicio, la *Reconvención* presentada por el señor Vega Collazo en el presente caso, a saber, el caso civil núm. CA2024CV04255, así como la *Demanda* sobre

---

[1] La Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, explica que será una sentencia parcial final aquella que al resolverse el juzgador le adscribe carácter de finalidad. Es decir, que cumple con dos requisitos, a saber: (1) que el juzgador exprese clara e inequívocamente que no existe razón para posponer la resolución de esta reclamación hasta la adjudicación total del pleito, y (2) que ordene expresamente que se registre y se notifique esa sentencia. *Rosario y otros v. Hospital Gen. Menonita, Inc.,* 155 DPR 49, 57 (2001). En el presente caso, el TPI no cumplió con los requisitos antes expuestos en la determinación intitulada *Sentencia Parcial* de la cual se recurre. Por lo tanto, al tratarse de un dictamen interlocutorio, acogemos el presente recurso como un *Certiorari* toda vez que es el mecanismo adecuado para la resolución del caso de marras. No empecé lo anterior, por razones de economía procesal, conservará su designación alfanumérica.

liquidación de caudal hereditario de la Sra. Georgina Collazo Berrios (señora Collazo Berrios), radicada por el peticionario bajo el caso civil núm. FA2025CV00342 y consolidada con el presente caso. A tales efectos, dejó sin efecto todas las órdenes previamente emitidas en relación con la señora Collazo Berrios y a los bienes que pudiesen formar parte de su caudal hereditario.

Por los fundamentos que expondremos a continuación, expedimos el recurso de epígrafe y ***revocamos*** el dictamen recurrido.

I.

El 10 de diciembre de 2024, la Sra. Georgina De Lourdes Vega Collazo, la Sra. Arlivon del Carmen Vega Collazo y la Sra. Laura Elena Vega Collazo (en conjunto, las recurridas) presentaron una *Demanda* sobre liquidación de comunidad hereditaria contra el señor Vega Collazo y la señora Collazo Berríos.[2] Alegaron que, la sucesión del Sr. Luis Antonio Vega Vila (señor Vega Vila), fallecido intestado en el año 1976, estaba compuesta por su viuda, la señora Collazo Berríos, sus tres hijas —la parte recurrida— y su hijo, el peticionario, el señor Vega Collazo. Señalaron que a la señora Collazo Berríos le correspondía el cincuenta por ciento (50%) de los bienes relictos por haber sido adquiridos dentro de la sociedad legal de gananciales, mientras que el cincuenta por ciento (50%) restante correspondía a los herederos en partes iguales conforme a derecho.

Además, indicaron que los bienes inmuebles pendientes de liquidación comprendían un solar en la Urbanización Colinas del municipio de Luquillo, una parcela de terreno en el barrio Arenas en el municipio de Cidra y un solar con estructura en la Urbanización Lomas Verdes en el municipio de Bayamón, este último adquirido mediante la corporación Luisin Vega, Inc., cuya existencia fue

---

[2] *Véase*, Entrada Núm. 1, SUMAC TPI.

cancelada en el año 2014, y sobre el cual no existía controversia en cuanto a que formaba parte de la comunidad hereditaria. Indicaron que la propiedad de Lomas Verdes había generado rentas retenidas exclusivamente por el peticionario, en detrimento de los derechos de la parte recurrida y de la señora Collazo Berríos, quienes tenían participación proporcional en las mismas.

Asimismo, expusieron que, si bien la sucesión se encontraba lista para ser liquidada, el peticionario se había negado y había entorpecido el proceso de venta de los bienes, imposibilitando así la culminación de la liquidación. Además, destacaron que la señora Collazo Berríos, de avanzada edad, había manifestado reiteradamente su necesidad de recibir su participación en la comunidad hereditaria. Por todo lo anterior, solicitaron que se ordenara la venta de los bienes en común, la adjudicación de las participaciones correspondientes a cada parte conforme al estado de derecho vigente al momento del fallecimiento del causante, que se obligara al señor Vega Collazo a rendir información y consignar las rentas generadas por la propiedad en Loma Verdes y, finalmente, que se le impusieran costas, gastos y honorarios de abogado.

En respuesta, el 18 de marzo de 2025, el señor Vega Collazo presentó su *Contestación a Demanda y Reconvención.*[3] En esta, se sometió voluntariamente a la jurisdicción del Tribunal tras conocer la demanda de liquidación de comunidad hereditaria del señor Vega Vila. Aceptó y negó diversas alegaciones. En primer lugar, informó que la señora Collazo Berríos falleció el 2 de enero de 2025. Además, aseguró que esta última recibía mensualmente quinientos ($500.00) dólares, equivalentes a la mitad de la renta de la propiedad en la Urbanización Lomas Verdes, sin descuento alguno. Indicó que recibía igual suma, de la cual asumía el pago de contribuciones,

---

[3] *Véase*, Entrada Núm. 6, SUMAC TPI.

fumigación, cobro de rentas y depósito mensual de la parte correspondiente a la señora Collazo Berríos. Sostuvo que esta última percibió la totalidad de las rentas hasta mayo del año 2021, fecha en que, con su anuencia, el peticionario realizó una inversión en el inmueble para conservar a la inquilina.

Alegó que, las recurridas por su parte, desatendieron la propiedad, no participaron en las reparaciones ni en la búsqueda de un nuevo arrendatario en aras de evitar que la propiedad se convirtiera en un estorbo público debido a su estado de deterioro. Adujo que sus gestiones evitaron que el edificio se deteriorara y permitieron conservarlo como fuente de ingresos para la señora Collazo Berríos y la sucesión. Afirmó que las recurridas nunca reclamaron participación en las rentas ni aportaron a los gastos del inmueble.

Por otro lado, aceptó que la señora Collazo Berríos y sus hijos dispusieron de dos propiedades del caudal hereditario del señor Vega Vila, a saber, una residencia vendida el 4 de noviembre de 2022, por la cual la señora Collazo Berrios recibió $151,499.99, y un solar vendido el 7 de junio de 2023, del cual obtuvo $24,608.63. Asimismo, señaló que la señora Collazo Berríos devengaba aproximadamente $2,000 mensuales de Seguro Social, más de $2,000 mensuales por rentas de Airbnb y $500 del edificio de Lomas Verdes. Aseguró que las cantidades antes mencionadas totalizaban a más de $215,000.00.

Expresó que, el 21 de diciembre de 2023, la representación legal de las recurridas le informaron que la señora Collazo Berríos se estaba quedando sin dinero. Ante ello, sostuvo que solicitó los estados bancarios correspondientes, pero no todos fueron provistos ni se ofreció explicación por la cual no estuvieran disponibles. Señaló que, la Sra. Georgina De Lourdes Vega Collazo, tenía acceso a la cuenta, pero no entregó los estados de noviembre del año 2022

a junio del año 2023 ni el de marzo del año 2024, y los disponibles carecían de las imágenes de cheques necesarias para verificar los pagos efectuados.

Finalmente, aceptó que se autorizara la venta de las propiedades en comunidad de bienes y que el producto de dichas ventas se consignara ante el TPI hasta que se adjudicara la totalidad de los caudales del señor Vega Vila y la señora Collazo Berríos, una vez se resolvieran las causas de acción en daños y perjuicios. Como defensas afirmativas, planteó que la *Demanda* carecía de causa de acción, era temeraria y contraria a derecho; que aplicaba la doctrina de los actos propios y que existía un contrato de arrendamiento vigente nunca impugnado.

Por otro lado, en su reconvención, el peticionario alegó que la señora Collazo Berríos no se encontraba capacitada para administrar su dinero debido a su avanzada edad y condiciones de salud, ya que olvidaba con frecuencia eventos y repetía preguntas en una misma conversación. Puntualizó que las recurridas asumieron el control total sobre su madre, impidiéndole al participar en decisiones relacionadas con su salud o verificar el uso de los fondos para el pago de sus deudas y gastos. Afirmó que, toda comunicación con las recurridas era a través de su representación legal.

Indicó que las recurridas incumplieron con su deber de velar y administrar los fondos de la señora Collazo Berríos como lo haría un buen padre de familia. Sostuvo que, el 29 de septiembre de 2021, a través de su representación legal, las recurridas se comprometieron a estar atentas al bienestar de su madre. No obstante, señaló que estas coordinaron servicios de cuido a un costo excesivo, sufragados con los ingresos de la señora Collazo Berríos, desatendiendo las recomendaciones del peticionario para contratar un servicio de igual calidad y menor costo.

Esbozó que, el 4 de noviembre de 2022, la señora Collazo Berríos vendió su participación en la residencia familiar por la suma de $151,499.99, y el 7 de junio de 2023 vendió su participación en el solar de Colinas de Luquillo por $25,235.76, incluyendo un reembolso del CRIM. Además, reiteró que la señora Collazo Berrios recibía más de $1,800 mensuales del Seguro Social, un promedio de $2,500 mensuales por renta de Airbnb del apartamento del Condominio Marbella del Caribe Este, y $500 mensuales por concepto de renta del edificio en Lomas Verdes. Afirmó que, en total, entre noviembre de año 2022 y diciembre del año 2023, la señora Collazo Berrios recibió ingresos que excedían los $230,000.00.

A pesar de ello, alegó que, el 21 de diciembre de 2023 las recurridas, mediante su representación legal, le informaron su madre necesitaba vender otra propiedad de la sucesión porque se había quedado sin dinero. Argumentó que, las recurridas, profesionales de alto nivel —dos de ellas contadoras públicas autorizadas—, tenían la capacidad para manejar adecuadamente las finanzas de su madre. Sin embargo, sostuvo que cuando solicitó copia de los estados bancarios para corroborar el uso de los fondos, se le indicó que los mismos estaban incompletos o extraviados. Adujo que, posteriormente, el 10 y 16 de enero del año 2024, las recurridas alegaron no tener acceso a las cuentas de banco de la señora Collazo Berríos.

Aseguró que la falta de fondos provocó a la señora Collazo Berríos gran sufrimiento y angustia, lo que a su vez causó profundo dolor al peticionario al presenciar el deterioro de su madre pese a las advertencias que hizo sobre su cuido y administración del dinero. Ante ello, reclamó daños emocionales sufridos por el a raíz de esta situación que estimó en $25,000.00.

Además, alegó que el cardiólogo de confianza de la señora Collazo Berríos, le informó sobre un tumor sobre los ojos de su madre que requería una cirugía conocida como "Cirugía de Ohms". Indicó que, a tales efectos, coordinó cita con el especialista Dr. Hiram Ruiz, en el Hospital Hermanos Meléndez, pero la señora Collazo Berríos se negó a asistir y las recurridas se negaron a ayudar a trasladarla, limitándose a responder por conducto de su representación legal que el peticionario debía hacerlo. Sostuvo que, como consecuencia, la falta de tratamiento ocasionó un daño físico irreparable a la señora Collazo Berríos, lo que le generó daños adicionales valorados en $50,000.00.

Por otro lado, en su segunda causa de acción, el peticionario indicó que la señora Collazo Berríos falleció el 2 de enero de 2025 y que se enteró de su muerte por una cuidadora, quien le indicó que, por instrucciones de las recurridas, la funeraria recogería el cuerpo para cremarlo. Alegó que, al día siguiente, fue notificado por mensaje de texto que se realizaría una misa privada, sin que se le dieran detalles. Expresó que cinco días después del fallecimiento, el personal de la funeraria lo contactó para solicitar su firma en un permiso de cremación, el cual nunca autorizó.

Manifestó que, el 10 de enero de 2025, fue informado por una prima que las recurridas habían dispuesto el entierro de su madre para el 14 de enero de 2025 a las 11:00 a.m. sin haberle notificado. Ante ello, argumentó que las recurridas actuaron unilateralmente y en contravención a las disposiciones legales y reglamentarias aplicables, las cuales disponían que el cuerpo del fallecido debía ser entregado al hijo mayor, en este caso el peticionario.

Debido a las actuaciones de las recurridas, al impedirle despedirse de su madre y disponer de sus restos sin su consentimiento, reclamó daños por concepto de sufrimientos y angustias mentales los cuales a su juicio se estimaban en

$500,000.00. Además, solicitó la desestimación de la *Demanda*, la imposición de honorarios por temeridad y que se acogiera su reconvención por la suma total de $575,000.00.

Así las cosas, ese mismo día, a saber, el 18 de marzo de 2025, el peticionario presentó una *Moción en Solicitud de Remedio*.[4] Allí, solicitó descubrimiento de prueba como parte de su debido proceso de ley. Particularmente pidió que se expidieran órdenes para obtener copia certificada de los récords médicos de la señora Collazo Berríos, provenientes de la Dra. Cynthia López Rodríguez, el Hospital El Maestro y la aseguradora Triple S. Además, solicitó al Banco Popular de Puerto Rico los estados de cuenta de la causante (2019-2025) e información sobre accesos a la cuenta, y a Servicios Funerarios Católicos LLC sobre cualquier documento relacionado con los servicios prestados.

Atendida esta solicitud, el 18 de marzo de 2025, el TPI dictó un *Orden* que se notificó el 19 de marzo de 2025 disponiendo lo siguiente: "Como se pide".[5] Posteriormente, el 19 de marzo de 2025, el peticionario presentó otra *Moción en Solicitud de Remedio* indicando que por error e inadvertencia no incluyó en la moción previa un proyecto de orden dirigido al Hospital Presbiteriano Ashford.[6]

Por su parte, el 6 de abril de 2025, las recurridas presentaron una *Urgente Moción en Solicitud de Desestimación, sobre Paralización de Ordenes y en Solicitud de Consignación de Rentas*.[7] Expresaron que la presente acción se presentó con el propósito de liquidar el caudal hereditario del señor Vega Vila. Puntualizaron que cumplieron con los requisitos legales correspondientes al someter la Resolución de Declaratoria de Herederos y el Certificado de Relevo

---

[4] *Véase*, Entrada Núm. 7, SUMAC TPI.
[5] *Véase*, Entrada Núm. 9, SUMAC TPI.
[6] *Véase*, Entrada Núm. 20, SUMAC TPI.
[7] *Véase*, Entrada Núm. 27, SUMAC TPI.

de Hacienda, lo que colocaba el referido caudal en condiciones de proceder a su liquidación. No obstante, indicaron que el señor Vega Collazo, en su contestación, presentó una reconvención que no guardaba relación con el pleito instado, pues versaba sobre el caudal hereditario de su madre, la señora Collazo Berrios, quien falleció sin haber sido emplazada en esta acción.

En cuanto a la sucesión de la señora Collazo Berrios, sostuvieron que el peticionario no había presentado ante el TPI los documentos indispensables para que pudiese emitirse un remedio, tales como el Certificado de Defunción expedido por el Registro Demográfico, la Resolución de Cartas Testamentarias, la Planilla de Caudal Relicto ni el Relevo de Hacienda. Explicaron que, conforme a nuestro ordenamiento, y en especial a lo dispuesto en el Código de Rentas Internas, ningún Tribunal podía ordenar la liquidación de bienes hereditarios sin someter los documentos necesarios que acreditaran de qué se componía el caudal y si el referido caudal tenía deudas que requirieran un pago preferente y si el mismo estaba sujeto algún gravamen. En consecuencia, argumentaron que el TPI debía desestimar, sin perjuicio, la reconvención presentada por el peticionario en cuanto a la sucesión de la señora Collazo Berrios.

Por otro lado, adujeron que el señor Vega Collazo había solicitado múltiples órdenes vinculadas al caudal de la señora Collazo Berrios, a pesar de que el TPI estaba impedido de conceder remedios sobre dicho caudal. Asimismo, reiteraron que el peticionario había recibido por años rentas de la propiedad ubicada en Bayamón, propiedad de la sucesión del señor Vega Vila, sin compartir dichas rentas con las demás herederas. Así pues, sostuvieron que procedía ordenarle consignar en la Secretaría del TPI la suma mensual de $1,000.00 que producía dicho arrendamiento, bajo apercibimiento de desacato.

En virtud de lo expuesto, solicitaron al TPI que desestimara sin perjuicio la reconvención del peticionario por falta de cumplimiento con los requisitos de ley **o, en la alternativa, que paralizara la misma y dejara sin efecto las órdenes emitidas hasta que se cumpliera con el Código de Rentas Internas.** Además, pidieron ordenarle al peticionario la consignación de las rentas derivadas del inmueble perteneciente a la sucesión del señor Vega Vila ubicada en Bayamón hasta que se completara la liquidación del caudal hereditario.

El 9 de abril de 2025, el peticionario presentó una *Solicitud de Consolidación.*[8] En esta, solicitó al TPI la consolidación del caso civil núm. FA2025CV00342, en el cual él figuraba como demandante contra sus coherederas, con el caso de autos. Señaló que el caso antes mencionado trataba sobre la liquidación de la comunidad hereditaria de la señora Collazo Berríos, y que involucraba los mismos activos y partes, por lo cual resultaba procedente consolidarlos. Argumentó que la consolidación favorecía la economía procesal, evitaba la duplicidad de pleitos y prevenía la posibilidad de fallos contradictorios sobre los mismos asuntos. Por todo ello, solicitó que se declarara con lugar la petición y que se consolidara el caso civil núm. FA2025CV00342 con el caso de autos. El 11 de abril de 2025, el TPI consolidó los dos (2) casos.[9]

Posteriormente, el 24 de abril de 2025, el señor Vega Collazo presentó una *Moción en Cumplimiento de Orden.*[10] En lo relativo a la solicitud de desestimación de la reconvención, expresó que conforme surgía de la reconvención, las recurridas no colaboraron ni prestaron su consentimiento para conseguir un cuido más económico para su señora madre, lo que obligó a la venta de dos

---

[8] *Véase*, Entrada Núm. 29, SUMAC TPI.
[9] *Véase*, Entrada Núm. 31, SUMAC TPI.
[10] *Véase*, Entrada Núm. 38, SUMAC TPI.

propiedades del caudal hereditario por el alto costo que representaba su atención. Indicó que dichas propiedades se vendieron en condiciones desventajosas debido a la presión económica y de tiempo por falta de fondos de la señora Collazo Berríos. En consecuencia, argumentó que la partición no podía completarse sin antes resolverse las causas de acción que formaban parte de la reconvención. Puntualizó que las Reglas de Procedimiento Civil de Puerto Rico contemplaban la figura de la reconvención compulsoria, así como la permisible y la acumulación de reclamaciones por lo cual no procedía la desestimación de la Reconvención presentada.

En cuanto a la solicitud de paralización de órdenes, indicó que la Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1, establecía que el descubrimiento de prueba comprendía toda materia pertinente al pleito, aun aquella que eventualmente pudiese resultar inadmisible, siempre que existiera una probabilidad razonable de conducir al descubrimiento de evidencia admisible. Por lo tanto, argumentó que las órdenes dictadas por el TPI resultan procedentes como cuestión de derecho y necesarias para garantizar su debido proceso de ley, toda vez que versaban sobre asuntos directamente relacionados con la demanda y la reconvención.

En lo que respecta a la consignación de rentas, sostuvo que no correspondía ordenar dicho remedio. Señaló que, el 2 de abril de 2025, les remitió por correo certificado a la Sra. Laura Vega Collazo tres (3) cheques correspondientes a las rentas de diciembre de 2024 y de enero a abril de 2025, en cumplimiento con el contrato de arrendamiento vigente y en reconocimiento de la participación hereditaria de las recurridas. Para sustentar lo anterior, anejó copia de la carta enviada, de los cheques y del acuse de recibo. Adujo que los documentos antes mencionados fueron enviados también al correo electrónico de todas las recurridas, lo cual constaba de un

documento anejado a dicha moción. Asimismo, aseguró que el 4 de abril de 2025, las recurridas, a través de su abogado, confirmaron haber recibido dicho correo, según se acreditaba con la carta que se acompañaba como parte de la moción. De este modo, indicó que resultaba claro que las recurridas tenían conocimiento del envío de las rentas antes de radicar la moción en solicitud de consignación.

Por otro lado, sostuvo que ya se habían vendido dos propiedades del caudal del señor Vega Vila y a la señora Collazo Berríos se le adjudicó su participación correspondiente de un 50%, además de su cuota viudal usufructuaria. Asimismo, planteó que no se había expedido carta testamentaria, pero resultaba improcedente dicha alegación, pues en el testamento otorgado por la señora Collazo Berríos no se había nombrado albacea, y el procedimiento de expedición de cartas testamentarias fue derogado mediante la Ley Núm. 219-2024. **Indicó que copia del testamento se acompañaba como parte de esta moción.**

Finalmente, rechazó la alegación de las recurridas de que el caudal del señor Vega Vila estaba listo para distribución, ya que, a su entender, para vender cualquier propiedad del caudal resultaba indispensable inscribir primero en el Registro de la Propiedad a los herederos de la señora Collazo Berríos en sustitución de ésta. En virtud de lo anterior, solicitó que se declarara No Ha Lugar la moción presentada por las recurridas y que se continuara con los procedimientos en el presente caso.

Evaluadas las posturas de ambas partes, el 25 de abril de 2025, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la *Urgente Moción en Solicitud de Desestimación, sobre Paralización de Ordenes y en Solicitud de Consignación de Rentas* presentada por las

recurridas el 6 de abril de 2025.[11] Además, ordenó la continuación de los procedimientos.

El 29 de abril de 2025, las recurridas presentaron una *Réplica a Oposición a Desestimación y en Solicitud de Reconsideración de Orden que deniega la Desestimación de la Reconvención* [...] sin someterse a la jurisdicción del caso civil consolidado núm. FA2025CV04255.[12] Expusieron que la acción de autos (CA2024CV04255) se radicó para liquidar el remanente del caudal hereditario de su padre, el señor Vega Vila, fallecido en el año 1976. Reiteraron que parte del caudal ya había sido vendido y adjudicado, pero aún quedan propiedades pendientes cuya disposición había sido obstaculizada por el señor Vega Collazo.

Insistieron que, el peticionario, al contestar la demanda, presentó una reconvención improcedente, pues en vez de atender la liquidación del caudal de su padre, solicitó la liquidación del caudal de su madre, la señora Collazo Berríos, fallecida el 1 de enero de 2025. Argumentaron que dicha petición incumplía con el Código de Rentas Internas de Puerto Rico, ya que antes de acudir al Tribunal el peticionario debía presentar el Relevo de Hacienda (certificación de no deuda contributiva) sobre el caudal de su madre, documento que no había sido tramitado ni presentado.

Adujeron que, pese a ello, el peticionario radicó una nueva demanda independiente (FA2025CV00342) con alegaciones idénticas a su reconvención, la cual fue consolidada con el caso de autos sin que ellas hubiesen sido debidamente emplazadas ni se atendiera su oposición a tal consolidación. Destacaron que, aun así, el peticionario no había rebatido el fundamento central de la solicitud de desestimación, a saber, la falta del relevo contributivo requerido por ley. Reiteraron que el Código de Rentas Internas

---

[11] *Véase*, Entrada Núm. 39, SUMAC TPI.
[12] *Véase*, Entrada Núm. 40, SUMAC TPI.

prohibía a tribunales, notarios y registradores intervenir en la liquidación de un caudal hereditario sin que previamente se presentara dicho relevo, por lo que el TPI carecía de jurisdicción para atender los reclamos del peticionario.

Señalaron que ellas sí acompañaron el relevo contributivo de su padre al presentar la *Demanda* de autos, lo que validaba su acción. En consecuencia, solicitaron que el TPI reconsiderara la *Orden* del 25 de abril de 2025 que declaró No Ha Lugar su solicitud de desestimación y que: (1) se desestimara sin perjuicio la reconvención y la demanda consolidada del peticionario hasta que se presentara el relevo de Hacienda del caudal de su madre; **(2) que en la alternativa, se paralizaran los procesos y órdenes emitidas a petición del peticionario hasta que cumpliera con los requisitos de ley**; y, por último (3) se continuara la liquidación del caudal del señor Vega Vila, el cual sí cumplía con la normativa y llevaba más de cuarenta (40) años pendiente de resolverse, principalmente por actuaciones dilatorias del peticionario.

El 9 de junio de 2025, el peticionario presentó una *Moción en Solicitud Urgente de Orden*.[13] Expuso que, en el caudal hereditario de su madre, la señora Collazo Berríos, se encontraban dos apartamentos en el Condominio Marbella del Caribe Este (Aptos. 1205 y 1206). Alegó que sus hermanas, las recurridas, se habían apropiado de los mismos y los habían utilizado tras el fallecimiento de su madre, negándose a proveer información sobre rentas, gastos de mantenimiento y seguros. Además, sostuvo que tenía conocimiento de que las recurridas no habían pagado las contribuciones de los apartamentos, lo cual había generado una deuda contributiva con el CRIM de $4,689.17 en el Apto. 1206, que seguía acumulando intereses y recargos.

---

[13] *Véase*, Entrada Núm. 46, SUMAC TPI.

Por otro lado, manifestó que, pese a sus solicitudes, sus hermanas se negaban a entregarle una llave de acceso al condominio, lo cual le impedía el disfrute de la propiedad común. Indicó que, el 1 de abril de 2025, cursó carta a sus hermanas solicitando información detallada sobre las rentas, gastos, comisiones de corredores y copia de la llave, reiterando que si alguna hermana utilizaba los apartamentos debía pagar la misma renta que se cobraba a terceros.

En vista de lo anterior, solicitó al TPI a que ordenara a las recurridas: (1) entregarle una llave de acceso al condominio; (2) proveer información sobre alquileres de febrero de 2025 al presente, incluyendo canon mensual, nombre de inquilinos y rentas recibidas; (3) rendir cuentas de gastos, comisiones y correduría; (4) informar si alguna de las hermanas había utilizado los apartamentos para su beneficio personal; y (5) se les prohibiera tomar acción alguna respecto a los apartamentos —incluyendo alquileres— sin su previo consentimiento.

Por su parte, ese mismo día, el 9 de junio de 2025, las recurridas presentaron una *Réplica a Moción en Solicitud de Orden Radicada por el Demandado Reconveniente y Reiterada Solicitud para que se Resuelva las Solicitud de Desestimación Pendientes*.[14] En síntesis, argumentaron que el Tribunal no podía continuar atendiendo el caso de autos mientras existían dos mociones de desestimación fundamentadas en falta de jurisdicción. En apoyo a su planteamiento citaron jurisprudencia reciente del Tribunal Supremo de Puerto Rico, que establecía que los Tribunales debían atender los asuntos jurisdiccionales con prioridad y que la falta de jurisdicción sobre la materia no podía subsanarse, no podía

---

[14] *Véase*, Entrada Núm. 47, SUMAC TPI.

conferirse voluntariamente y conllevaba la nulidad de las determinaciones emitidas.

Reiteraron que, en este caso, el peticionario no había presentado el certificado de defunción, una resolución de cartas testamentarias, la planilla de caudal relicto ni el relevo de Hacienda de la señora Collazo Berrios. Ante ello, insistieron que, conforme al Código de Rentas Internas de Puerto Rico, la transferencia o distribución de bienes hereditarios estaba sujeta al pago de contribuciones, cuyo cumplimiento se acreditaba con el relevo de Hacienda. Argumentaron que, sin estos documentos, los Tribunales tenían prohibido ordenar la liquidación de los bienes de un caudal.

En virtud de lo antes expresado, solicitaron al TPI que declarara con lugar su moción y resolviera las solicitudes de desestimación pendientes respecto a la reconvención y a la demanda consolidada sobre el caudal de la señora Collazo Berrios. Alegaron que permitir la continuación de los procesos sin cumplir con los requisitos legales expondría al Tribunal a emitir órdenes nulas por falta de jurisdicción.

Así las cosas, el 14 de junio de 2025, el peticionario presentó una *Segunda Moción en Cumplimiento de Orden*.[15] Alegó que las recurridas habían intentado fundamentar su solicitud de desestimación en hechos que eran infundados y carentes de veracidad. Reiteró que no era necesario expedir Cartas Testamentarias en este caso, pues en el testamento otorgado por la señora Collazo Berríos no se nombró albacea y, además, el procedimiento de expedición de dichas cartas fue derogado por la Ley Núm. 219-2024.

En cuanto a la solicitud de las recurridas de consignar en el Tribunal las rentas devengadas por las propiedades de la señora

---

[15] *Véase*, Entrada Núm. 52, SUMAC TPI.

Collazo Berrios, planteó que era improcedente, ya que las recurridas habían recibido su participación en esas rentas. Señalo que, de accederse a lo solicitado, se duplicaría el pago en su favor, lo que constituiría un enriquecimiento injusto. A tales fines, recalcó que el 2 de abril de 2025, envió a las recurridas la renta correspondiente a los meses de diciembre de 2024 y de enero a abril de 2025.

Por otra parte, rechazó la alegación de que obstaculizó la venta de las propiedades del caudal de su padre, señalando que esa aseveración no se ajustaba a la realidad. Asimismo, corrigió que la fecha de fallecimiento de la señora Collazo Berríos fue el 2 de enero de 2025 y no el 1 de enero de 2025, como alegaron las recurridas.

Respecto a la objeción de que no se había presentado la Planilla de Caudal Relicto, expresó que esa alegación era improcedente. Explicó que antes de radicar dicha planilla era necesario tasar y valorar los bienes inmuebles del caudal, lo cual requería una orden del Tribunal. Además, sostuvo que para preparar la planilla debían incluirse los bienes muebles como cuentas bancarias e inversiones, cuya información se encontraba en poder de las recurridas. Por lo tanto, indicó que no podía radicar la planilla hasta que se completara el proceso de descubrimiento de prueba.

Finalmente, incorporó por referencia su escrito previo titulado *Moción en Cumplimiento de Orden* presentado el 24 de abril de 2025, en el cual ya había planteado sus argumentos y solicitando remedios. Señaló que ese escrito fue presentado en respuesta a la primera moción de desestimación de las recurridas, y que el Tribunal resolvió "No Ha Lugar" a dicha moción el 25 de abril de 2025, autorizando la continuación de los procedimientos. En consecuencia, solicitó al TPI que declarara No Ha Lugar la segunda moción de desestimación presentada por las demandantes el 29 de abril de 2025 y que autorizara la continuación de los procesos.

En respuesta, las recurridas presentaron una *Réplica a Segunda Moción en Cumplimiento de Orden.*[16] Puntualizaron que, el argumento del peticionario sobre la supuesta obstaculización de la venta de propiedades, únicamente se refería a la sucesión de su padre, el señor Vega Vila, objeto del presente proceso. Expresaron que en nada podía relacionarse con su reconvención ni con la sucesión de su madre, la señora Collazo Berrios, ya que respecto a esta última no se había presentado declaratoria de herederos, cartas testamentarias ni Planilla de Caudal Relicto, por lo que el TPI carecía de jurisdicción.

Insistieron que el TPI no podía emitir remedios en torno a la sucesión de la señora Collazo Berrios, pues el peticionario no cumplió con los requisitos mínimos de ley. Señalaron que el Código de Rentas Internas exigía que se cumpliera con estos requisitos previo a que un Tribunal pudiese intervenir en la liquidación de una comunidad hereditaria. Además, rechazaron el argumento del peticionario de que necesitaba una orden judicial para tasar los inmuebles, ya que en la sucesión del padre las partes realizaron tasaciones sin intervención del Tribunal.

Alegaron que el peticionario pretendía, mediante mociones carentes de fundamento legal, forzar al TPI a continuar un trámite sobre el cual no tenía jurisdicción. En cuanto a ello, añadieron que el Tribunal Supremo había sido claro en que los Tribunales no podían abrogarse jurisdicción sobre asuntos en los que no se habían cumplido los requisitos legales.

Respecto al planteamiento de que el TPI había resuelto la continuación de la acción, aclararon que la orden del Tribunal solo atendió el asunto de la improcedencia de la consolidación de acciones y el incumplimiento de requisitos legales, sin entrar en el

---

[16] *Véase*, Entrada Núm. 53, SUMAC TPI.

tema de jurisdicción. Sostuvieron que, por tal motivo, radicaron una moción de reconsideración aún pendiente de resolución.

Finalmente, se reafirmaron en los fundamentos ya esbozados en tres escritos previos y solicitaron que se declarara Ha Lugar la moción presentada, y, en consecuencia, No Ha Lugar el escrito en cumplimiento de orden radicado por el peticionario, al no proveer fundamento alguno que permitiera al TPI asumir jurisdicción sobre la sucesión de la señora Collazo Berrios sin que se cumplieran los requisitos exigidos en ley.

El 16 de junio de 2025, el peticionario presentó dos (2) mociones. En la primera, incluyó la confirmación del envío de copia de la *Demanda* y del emplazamiento por edictos a las co-demandadas, la Sra. Arlivon Vega Collazo y la Sra. Georgina de Lourdes Vega Collazo.[17] En la segunda, informó que emplazó a la Sra. Laura Elena Vega Collazo de manera personal en su residencia e incluyó evidencia del emplazamiento diligenciado.[18]

Por otro lado, el 20 de junio de 2025, el señor Vega Collazo presentó un *Escrito a Expediente Judicial.*[19] En este, alegó que había cumplido con el pago de las rentas correspondientes a la propiedad en Lomas Verdes, incluyendo el envío de un cheque de $625.00 por los meses de diciembre 2024 a abril 2025, aunque las recurridas se habían negado a recibirlos o cobrarlos. Sostuvo que, contrario a lo planteado por ellas, no había retenido rentas y que, por el contrario, eran ellas quienes administraban los apartamentos 1205 y 1206 del Condominio Marbella Este en Carolina, hacían uso de estos y no habían pagado el CRIM, lo que había generado una deuda creciente. Por estos motivos solicitó al TPI a que ordenara a las recurridas a satisfacer su participación en dicha deuda, destacando que él había

---

[17] *Véase*, Entrada Núm. 54, SUMAC TPI.
[18] *Véase*, Entrada Núm. 55, SUMAC TPI.
[19] *Véase*, Entrada Núm. 63, SUMAC TPI.

cumplido responsablemente con sus obligaciones en Lomas Verdes, propiedad que no tenía deudas.

Ese mismo día, a saber, el 20 de junio de 2025, el peticionario presentó otra moción intitulada *Moción en Solicitud de Anotación de Rebeldía.*[20] Expuso que las co-demandadas, la Sra. Arlivon Del Carmen Vega Collazo y la Sra. Georgina de Lourdes Vega Collazo, fueron emplazadas mediante publicación de edicto el 7 de mayo de 2025, y además se les remitió copia de la *Demanda* y del emplazamiento por correo certificado. Sin embargo, sostuvo que el término de ley para contestar la demanda venció el 7 de junio de 2025 sin que las co-demandantes mencionadas comparecieran ni solicitaran prórroga. Por ello, solicitó al TPI que se les anotara la rebeldía.

Sometidas todas estas mociones ante la consideración del TPI, el 1 de julio de 2025, dicho foro emitió una *Sentencia Parcial* que se notificó el 3 de julio de 2025.[21] En primer lugar, el TPI realizó un breve relato de los hechos procesales y, en lo pertinente, puntualizó que, a su entender, la reconvención presentada por el peticionario no guardaba relación alguna con la liquidación del caudal hereditario del señor Vega Vila. Posteriormente, formuló las siguientes determinaciones de hechos:

1. Las demandantes Georgina De Lourdes, Arlivon Del Carmen y Laura Elena, todas de apellido Vega Collazo y el codemandado Luis Antonio Vega Collazo son los únicos hijos procreados por el causante Luis Antonio Vega Vila y la señora Georgina Collazo Berrios.

2. El causante Luis Antonio Vega Vila falleció intestado el 5 de marzo de 1976.

3. Las demandantes incluyeron como parte de sus alegaciones copia de la Resolución de Declaratoria de Herederos del causante y copia del Relevo de Hacienda sobre el caudal de éste.

---

[20] *Véase*, Entrada Núm. 64, SUMAC TPI.
[21] *Véase*, Entrada Núm. 68, SUMAC TPI.

4. Conforme las alegaciones contenidas en los escritos de ambas partes el caudal del causante Vega Vila ha sido liquidado parcialmente.

5. Las demandantes reclaman que el codemandado ha estado recibiendo por años la renta de una de las propiedades que forma parte del caudal de su padre pendiente de ser liquidado sin haber rendido cuenta alguna.

6. Solicitan que ordenemos la consignación de la totalidad de las rentas que se perciben sobre dicha propiedad.

7. Las demandantes reclaman además que su hermano el codemandado Luis A. Vega Collazo no ha permitido que el proceso de liquidación y adjudicación sobre el caudal de su padre culmine entorpeciendo el mismo.

8. Por su parte en la contestación a la Demanda el codemandado Vega Collazo negó las alegaciones de la Demanda. Reclamó que, en adición a él, su madre la Sra. Georgina Collazo Berrios estuvo participando de la mitad de la renta de una de las propiedades que forman parte del caudal del causando Vega Vila.

9. Expresó que su madre se benefició económicamente de la venta de algunas propiedades y cuestionó la utilización por parte de su madre y de las demandantes de las sumas recibidas por la primera, por concepto de dichas ventas.

10. Como parte de su Contestación a Demanda el codemandado Vega Collazo instó una Reconvención contra las demandantes. La Reconvención instada por él no tiene relación a las alegaciones de la demanda de autos.

11. La Reconvención del codemandado la cual incluye dos causas de acción está predicadas exclusivamente en reclamos sobre la muerte de la Sra. Georgina Collazo Berrios madre de todas las partes, quien falleció el 2 de enero de 2025.

12. Como parte de su Reconvención el codemandado no sometió ante este Tribunal ningún documento que nos permita asumir jurisdicción y emitir algún remedio en torno al caudal de la Sra. Georgina Collazo Berrios.

13. El codemandado proveyó una Resolución de declaratoria de Herederos y/o de las certificaciones acreditativas de algún Testamento otorgado por la Sra. Collazo Berrios, documento medular que define quienes son los herederos de la causante.

14. Tampoco sometió copia del Relevo de Hacienda sobre el caudal de la Sra. Georgina Collazo Berrios, documento imprescindible y sin el cual ningún caudal hereditario puede liquidarse en nuestra jurisdicción.

Tomando en consideración las determinaciones de hechos realizadas y tras analizar las alegaciones de las partes a la luz del derecho aplicable, el TPI concluyó que, conforme a la normativa vigente, carecía de jurisdicción para ordenar la liquidación de los bienes del caudal de la señora Collazo Berrios. Ello por entender que el peticionario no había cumplido con el requisito de acreditar los documentos legales necesarios que establecieran quienes eran los herederos de dicha sucesión, de qué bienes se componía el caudal, ni había sometido la Planilla de Caudal Relicto ni el correspondiente relevo expedido por el Departamento de Hacienda. Así pues, acogió los planteamientos de las recurridas y desestimó, sin perjuicio, tanto la reconvención presentada en el caso de autos como la Demanda consolidada bajo el caso civil núm. FA2025CV00342.

En virtud de lo anterior, dispuso que la demanda original continuaría su trámite ordinario y atendió varias mociones radicadas posteriormente a la solicitud de desestimación. Además, denegó la *Moción en Solicitud de Orden Urgente* y la *Moción en Solicitud de Anotación de Rebeldía* presentadas por el peticionario, por carecer de efecto tras la desestimación. En cuanto a las mociones informativas y escritos al expediente radicados por el codemandado, se tomó conocimiento sin necesidad de pronunciamiento adicional.

Inconforme con esta determinación, el 16 de julio de 2025, el señor Vega Collazo presentó una solicitud de reconsideración.[22] Indicó que, el TPI en su determinación expresó que la reconvención no guardaba relación con la liquidación del caudal hereditario del señor Vega Vila. Ante ello citó las disposiciones de las Reglas 11.2 y 14.1 de Procedimiento Civil, las cuales permitían la presentación de reconvenciones permisibles y acumulación de reclamaciones.

---

[22] *Véase*, Entrada Núm. 71, SUMAC TPI.

Por otro lado, indicó que el TPI también concluyó que su reconvención estaba exclusivamente basada en reclamos relacionados con el fallecimiento de la señora Collazo Berrios. Sin embargo, argumentó que la alegación incluida en su reconvención referente a la venta de las propiedades que formaban parte del caudal hereditario del señor Vega Vila con el fin de sufragar los gastos del cuido de la señora Collazo Berrios, incidía directamente con la controversia principal.

En cuanto a la determinación de que no presentó documentos sobre los herederos de la señora Collazo Berrios, aclaró que, en la Moción en Cumplimiento de Orden del 24 de abril de 2025, se incluyó el testamento de la causante, que identifica a sus hijos —las partes en este pleito— como herederos. Asimismo, sostuvo que, aunque no se había radicado la Planilla de Caudal Relicto, ello respondía a que era necesario primero establecer el inventario y valor de los bienes muebles e inmuebles, para lo cual se requería descubrimiento de prueba y peritaje. Indicó que dichos valores debían ser aceptados por todas las partes o ser avalados por el Tribunal antes de someter la planilla correspondiente.

Admitió que la radicación de la planilla de caudal relicto era un requisito procesal previo a la adjudicación de bienes. Sin embargo, indicó que no podía completarse sin que el Tribunal atendiera controversias probatorias sobre el valor de las propiedades. Además, señaló que se había informado que las recurridas poseían bienes muebles de la causante que no fueron incluidos en el borrador de planilla preparado por éstas, lo cual reforzaba la necesidad de que se atendiera el asunto en los méritos.

Finalmente, advirtió que la sentencia dictada lo privaba de su derecho a litigar las causas de acción planteadas en su reconvención y lo colocaba en estado de indefensión. En atención a lo anterior,

solicitó que se reconsiderara y revocara la *Sentencia Parcial,* y que los casos consolidados continuaran su trámite.

En respuesta, el 1 de agosto de 2025, las recurridas presentaron su oposición a la solicitud de reconsideración.[23] En esta, solicitaron que se declarara No Ha Lugar la solicitud de reconsideración presentada por señor Vega Collazo, toda vez que, a su entender, sus planteamientos constituían una versión incorrecta y distorsionada de los hechos y del derecho aplicable. En primer lugar, sostuvieron que la desestimación de las acciones del peticionario no se basó en que la reconvención careciera de relación con el caudal del señor Vega Vila, sino en que las acciones no cumplían con los requisitos legales que otorgaban jurisdicción al TPI para atender una liquidación de herencia. Expresaron que antes de poder instar tal procedimiento, debía acreditarse quiénes componían la sucesión y debía presentarse el relevo contributivo que emitiera el Departamento de Hacienda tras la radicación de la Planilla de Caudal Relicto.

Señalaron que, como segundo argumento, el peticionario alegó que en su reconvención cuestionó la venta de una propiedad del caudal del señor Vega Vila, realizada por él, sus hermanas y su madre, la señora Collazo Berríos, con el propósito de que esta última pudiera cubrir sus gastos de cuido. En cuanto a ello, indicaron que dicha venta fue realizada de común acuerdo por todas las partes y formaba parte de la liquidación de la sucesión del señor Vega Vila. En vista de ello, cuestionaron la pertinencia de revisar en este momento una venta acordada años atrás por todas las partes, y argumentaron que resulta contradictorio que el peticionario ahora impugnara sus propios actos, bajo el argumento de que la propiedad podría haberse vendido por un precio mayor.

---

[23] *Véase,* Entrada Núm. 77, SUMAC TPI.

Finalmente, en cuanto a este argumento, sostuvieron que lo expuesto por el peticionario no constituía una alegación válida, sino un dato histórico que carecía de fundamento, dado que el evento fue consensuado por todas las partes y se llevó a cabo sin incidente alguno.

Por otro lado, destacaron que el testamento de la señora Collazo Berrios, por sí solo no otorgaba jurisdicción al Tribunal para liquidar la herencia. Indicaron que, la presentación de la Planilla de Caudal Relicto y el certificado de cancelación del gravamen contributivo expedido por Hacienda era lo que le otorgaba jurisdicción al TPI para disponer sobre la liquidación del caudal de la señora Collazo Berrios.

En cuanto al planteamiento del peticionario de que era necesario esperar una valoración judicial de los bienes para poder radicar la planilla, las recurridas puntualizan que ello era incorrecto. Explicaron que desde la aprobación de la Ley Núm. 76-2017, la Planilla de Caudal Relicto era meramente informativa y requería reportar la base contributiva de los bienes según el valor al momento en que fueron adquiridos por el causante, no el valor de mercado actual. Sostuvieron que para completar dicha planilla bastaba con documentos como escrituras de compra, tasaciones anteriores o valores del CRIM. Por ende, argumentaron que la alegación del peticionario de que necesitaba una tasación ordenada por el Tribunal carecía de fundamento.

Por último, plantearon que, conforme al Código de Rentas Internas y a la jurisprudencia reiterada, ningún tribunal podía aprobar la liquidación de un caudal hereditario sin que se hubiese acreditado previamente el pago o exención de las contribuciones aplicables mediante el certificado de Hacienda. Expresaron que, sin este documento esencial, el TPI continuaba careciendo de jurisdicción sobre la herencia de la señora Collazo Berrios.

Evaluadas las posturas de ambas partes, el 21 de agosto de 2025, el TPI dictó y notificó una *Orden* declarando No Ha Lugar la solicitud de reconsideración.[24] Aún en desacuerdo, el 19 de septiembre de 2025, el peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Incidió el Tribunal de Primera Instancia en craso abuso de discreción o error de derecho al dictar la Sentencia Parcial desestimando la reconvención en el caso CA2024CV04255 por el fundamento de no tratarse de la liquidación del caudal hereditario del causante Luis A. Vega Vila. Caso CA2024CV04255.**

> **Incidió el Tribunal de Primera Instancia en craso abuso de discreción o error de derecho al dictar la Sentencia determinando que: "La Reconvención del codemandado, la cual incluye dos causas de acción, está predicada exclusivamente en reclamos sobre la muerte de la Sra. Georgina Collazo Berrios, madre de todas las partes, quien falleció el 2 de enero de 2025. Caso CA2024CV04255.**

> **Incidió el Tribunal de Primera Instancia en craso abuso de discreción o error de derecho al dictar la Sentencia desestimando la Demanda instada por el Apelado fundamentando que: "El codemandado no sometió documento alguno que dispusiera quienes son los herederos de la Sra. Collazo Berrios, así como tampoco sometió la Planilla de Caudal relicto de ella y/o el Relevo sobre el mismo emitido por el Departamento de Hacienda." Caso CA2024CV04255.**

Atendido el recurso, el 23 de septiembre de 2025, emitimos una *Resolución* concediéndole a las recurridas hasta el 30 de septiembre de 2025 para presentar su posición en cuanto al recurso. Oportunamente, las recurridas presentaron su *Alegato en Oposición a Recurso de Apelación Acogido como Recurso de Certiorari* y negaron que el TPI cometiera los errores que el señor Vega Collazo le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

---

[24] *Véase*, Entrada Núm. 78, SUMAC TPI.

## II.

### -A-

La Regla 11 de Procedimiento Civil, 32 LPRA Ap. V, R. 11, regula lo relacionado a los mecanismos de la *Reconvención* y la *Demanda Contra Coparte*. En lo pertinente a la controversia ante nuestra consideración, la Regla 11.1, específicamente dispone:

> Una alegación contendrá por vía de reconvención cualquier reclamación que la parte que la formula tenga contra cualquier parte adversa al momento de notificar dicha alegación, siempre que surja del acto, de la omisión o del evento que motivó la reclamación de la parte adversa y no requiera para su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción. Sin embargo, no será necesario incluir dicha reclamación mediante reconvención si al momento de comenzarse el pleito tal reclamación era ya objeto de otro pleito pendiente.

Conforme al ordenamiento procesal vigente, existen dos (2) tipos de reconvenciones, las permisibles y las compulsorias. *SLG Font Bardón v. Mini-Warehouse Corp.*, 179 DPR 322, 332 (2010). Las reconvenciones permisibles son aquellas que no surgen del mismo acto o evento que motivó la reclamación de la parte contra la que se presenta. Regla 11.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 11.2. Por otro lado, la reconvención compulsoria se desprende de la Regla 11.1 de Procedimiento civil, *supra*, y "obliga a una parte a reconvenir contra otra parte adversa que le esté reclamando, siempre y cuando la causa de acción de la parte reconveniente surja del mismo acto, omisión o evento que motivó la reclamación de la parte reconvenida." J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publicaciones JTS, 2011, T. II, pág. 558.

El propósito de esta regla es establecer un mecanismo para dilucidar todas las controversias comunes en una sola acción y así evitar la multiplicidad de litigios. *Neca Mortgage Corp. v. A & W Dev. S.E.,* 137 DPR 860, 867 (1995). A pesar de lo anterior, la Regla 11.1 de Procedimiento Civil, *supra*, es imprecisa en su definición de qué constituye una reclamación compulsoria. J. Cuevas Segarra, *op. cit.*,

pág. 564. Por lo tanto, el Tribunal Supremo, citando al tratadista Hernández Colón, afirma que:

> Una reconvención es compulsoria: (1) si existe una relación lógica entre la reclamación presentada en la demanda y la que es objeto de la reconvención; (2) cuándo los hechos esenciales de ambas reclamaciones están tan vinculados que la economía judicial exige que se ventilen de conjunto; (3) si las cuestiones de hecho y de derecho entre ambas son las mismas; (4) si la doctrina de *res judicata* impediría una acción independiente; y, (5) si ambas reclamaciones surgen de la misma prueba y están vinculadas lógicamente. *Consejo de Titulares v. Gómez Estremera,* 184 DPR 407, 424-425 (2012).

**-B-**

El Código Civil de Puerto Rico establece que la sucesión por causa de muerte es la transmisión de aquellos derechos y obligaciones del causante que no se extinguen por su muerte. Art. 1546, Código Civil de 2020, 31 LPRA sec. 10911. De esta forma, esta sucesión se abre, precisamente, con la muerte del causante. Art. 1547 del Código Civil de 2020, 31 LPRA sec. 10912.

La apertura de la herencia a la que estén llamados varios herederos, da vida a la comunidad hereditaria mientras que la partición o división concluye la misma. J. Castán Tobeñas, Derecho Civil Español, Común y Foral, 8va ed., Madrid, Ed. Reus, 1978, T. VI, Vol. I, pág. 296. Esta comunidad hereditaria surge al momento en que dos o más herederos concurren en una sucesión. *Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010).

Ahora bien, la partición de la comunidad hereditaria es el mecanismo mediante el cual se le confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados, extinguiéndose así la indivisión de la comunidad. Art. 1796 del Código Civil de 2020, 31 LPRA sec. 11691. Sin embargo, mientras no se realicen las operaciones de partición, ninguno de los herederos posee un derecho concreto o determinado sobre parte alguna de la

herencia que le permita disponer libremente de ella. *Herederos de Collazo v. Registrador,* 172 DPR 776, 784 (2007).

Ahora bien, en lo pertinente al caso ante nos, la Sección 2054.05 de la Ley Núm. 1-2011, según enmendada, conocida como *Código de Rentas Internas de Puerto Rico de 2011,* 13 LPRA sec. 31165 (Código de Rentas Internas) dispone, entre otras cosas, que los Tribunales no podrán autorizar actos de división o ejecución sobre bienes de una herencia mientras no se haya acreditado el pago o depósito de las contribuciones correspondientes ante el Departamento de Hacienda.

**-C-**

El principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V., R. 1. En virtud de ello, el TPI tiene la indelegable labor de velar y garantizar que los procedimientos y asuntos ante su consideración se ventilen sin demora con miras a lograr una justicia rápida y eficiente. *In re Pagani Padró,* 181 DPR 517, 529 (2011). Es decir, los jueces del TPI gozan de amplia discreción para gobernar los procedimientos judiciales y deben conseguir un balance justo entre el interés de que los pleitos se resuelvan en sus méritos y el interés de no permitir demoras innecesarias o duplicidad en el trámite judicial. *Fine Art Wallpaper v. Wolff,* 102 DPR 451, 458 (1974).

Nuestras Reglas de Procedimiento Civil tienen la finalidad de evitar la proliferación de acciones, lograr la económica procesal y evitar la indeseable probabilidad de que surjan fallos incompatibles relacionados con un mismo incidente. *Vives Vázquez v. E.L.A.,* 142 DPR 117, 125 (1996). Así también, un principio cardinal en nuestro derecho procesal es el de evitar la multiplicidad de pleitos, y de adjudicar en una causa las distintas reclamaciones de las partes

cuando la naturaleza de las causas lo permiten. Íd. Así pues, nuestro ordenamiento procesal civil rechaza la adjudicación por dos foros de una misma controversia para evitar sujetar las partes a resultados incompatibles provenientes de diferentes foros. *Consejo de Titulares v. Gómez Estremera*, supra, pág. 427.

Cónsono con lo anterior, nuestro Tribunal Supremo ha expresado que es indeseable la bifurcación o fragmentación de los procedimientos judiciales, ya que "las Reglas de Procedimiento Civil propenden a la máxima expansión del ámbito de la acción civil trayendo a su núcleo los elementos dispersos de reclamaciones, partes y remedios en orden a la adjudicación integral de la controversia". *Pueblo v. Agostini Rodríguez*, 151 DPR 426, 481 (2000). Por consiguiente, el ordenamiento procesal civil rechaza la adjudicación por dos tribunales de una cuestión que es esencialmente indivisible. Íd.

III.

El peticionario impugnó una *Sentencia Parcial* que el TPI dictó el 1 de julio de 2025 y notificó el 3 de julio de 2025, mediante la cual desestimó, sin perjuicio, su Reconvención, así como la *Demanda* sobre liquidación de caudal hereditario de la señora Collazo Berrios, que radicó bajo el caso civil núm. FA2025CV00342 y la cual fue consolidada con el presente caso.

Particularmente, el peticionario en sus tres señalamientos de error, sostuvo que el TPI incurrió en craso abuso de discreción y error de derecho por tres razones principales: primero, al desestimar la reconvención bajo el fundamento de que no se trataba de la liquidación del caudal hereditario del señor Vega Vila; segundo, al afirmar que su Reconvención, que incluía dos causas de acción, estaba predicada exclusivamente en reclamos sobre la muerte de la señora Collazo Berríos; y tercero, al desestimar la Demanda instada bajo el caso civil núm. FA2025CV00342 y la cual fue consolidada

con el presente caso por la supuesta falta de presentación de documentos indispensables para identificar a los herederos y la planilla de caudal relicto.

Discutiremos el primer y segundo señalamiento de error en conjunto por estar íntimamente relacionados entre sí. En primer lugar, cabe precisar que, si bien en su *Sentencia Parcial* el TPI expresó que "la Reconvención del codemandado, la cual incluye dos causas de acción, está predicada exclusivamente en reclamos sobre la muerte de la Sra. Georgina Collazo Berríos, madre de todas las partes, quien falleció el 2 de enero de 2025", y que la reconvención presentada por el peticionario no guardaba relación alguna con la liquidación del caudal hereditario del señor Vega Vila, no fue esta la razón que motivó la desestimación de la misma, como lo alegó el peticionario en sus señalamientos de error. Coincidimos con las recurridas en cuanto a que el fundamento real utilizado para la desestimación de la reconvención fue que las causas de acción no cumplían con los requisitos legales que otorgaban jurisdicción para atender la liquidación de la herencia de la señora Collazo Berríos.

Sin embargo, aun reconociendo esta premisa, luego de revisar detenidamente la reconvención presentada por el peticionario, concluimos que ésta cumple con los criterios de una reconvención compulsoria, dado que surge de los mismos hechos que fundamentan la Demanda original, comparte pruebas y su resolución conjunta evita duplicidad de pleitos, en consonancia con los principios de economía procesal y tramitación eficiente establecidos en nuestro ordenamiento jurídico.

Por todo lo antes expuesto, concluimos que el TPI erró al desestimar la reconvención presentada por el peticionario, toda vez que, como ya mencionamos, la misma cumple con los criterios de una reconvención compulsoria y guarda relación lógica y jurídica con la Demanda principal. No obstante, dejamos claramente

establecido que esta determinación no implica que estamos prejuzgando sobre la procedencia en los méritos de las reclamaciones formuladas en dicha reconvención, sino únicamente que el TPI debe considerarla y evaluarla conforme a derecho, en lugar de desestimarla. Así pues, el primer y segundo señalamiento de error se cometieron.

En cuanto a la desestimación de la *Demanda* sobre liquidación de caudal hereditario de la señora Collazo Berrios instada bajo el caso civil núm. FA2025CV00342, consolidada con el presente caso, ésta se fundamentó en la alegada falta de presentación de documentos indispensables, tales como la planilla de caudal relicto y/o el relevo correspondiente emitido por el Departamento de Hacienda, así como en la ausencia de información sobre la identidad de los herederos. Sin embargo, dicha justificación refleja un entendimiento erróneo del alcance de la jurisdicción del tribunal, así como de los principios de economía y justicia procesales que rigen nuestro ordenamiento civil.

Es importante señalar que, como consta en el expediente y reconoce el propio TPI en su determinación de hechos núm. 13, el testamento de la señora Collazo Berríos fue debidamente presentado como parte de una moción sometida por el peticionario ante el TPI. Dicho documento es fundamental para la determinación de los herederos y la correcta tramitación de los asuntos sucesorios. Por consiguiente, el TPI no podía fundamentar la desestimación de la Demanda en un supuesto desconocimiento de los herederos, pues tenía a su disposición el testamento y, conforme a su obligación procesal, debía evaluarlo y considerar su contenido antes de tomar cualquier determinación sobre jurisdicción.

La ausencia de otros documentos, como la planilla de caudal relicto o el relevo de Hacienda, tampoco justificaba la desestimación, sino que podía resolverse mediante mecanismos procesales

intermedios, tales como la orden de entrega de documentos o la paralización temporal del procedimiento. Las recurridas incluso ofrecieron la opción de suspender el proceso hasta tanto el peticionario cumpliera con los requisitos legales, demostrando que existían alternativas menos drásticas para atender la situación sin afectar el derecho del peticionario a litigar sus causas de acción.

Además, es importante puntualizar que la Sección 2054.05 del Código de Rentas Internas, *supra*, no dispone que el TPI carezca de jurisdicción en ausencia de la planilla de caudal relicto o del relevo de Hacienda. Dicha disposición únicamente establece que los tribunales no pueden autorizar actos de división o ejecución sobre bienes de una herencia mientras no se haya acreditado el pago o depósito de las contribuciones correspondientes ante el Departamento de Hacienda. Por consiguiente, la falta de dichos documentos no afecta la jurisdicción del tribunal, sino que constituye un requisito que debe cumplirse en la etapa de división o adjudicación de los bienes hereditarios. En consecuencia, el fundamento utilizado por el TPI para declarar falta de jurisdicción resultó jurídicamente erróneo.

La decisión del TPI también contraviene el principio de economía procesal, consagrado en la Regla 1 de Procedimiento Civil, *supra*, y reiteradamente confirmado por nuestro Tribunal Supremo. Las Reglas de Procedimiento Civil buscan evitar la multiplicidad de pleitos, adjudicar en una sola causa las distintas reclamaciones de las partes, evitar resultados contradictorios en foros distintos y garantizar la tramitación ordenada y eficiente de los asuntos ante el tribunal. Desestimar la Demanda por motivos que podrían resolverse mediante órdenes de entrega de documentos o paralización temporal, incrementa la litigiosidad y vulnera la finalidad de las reglas de adjudicación integral de la controversia. Por todo lo anterior, el TPI erró al desestimar la Demanda del

peticionario y, en consecuencia, el tercer señalamiento de error se cometió.

IV.

Por los fundamentos antes expuestos, expedimos el recurso de epígrafe y ***revocamos*** el dictamen recurrido. Consecuentemente, le ordenamos al TPI que proceda conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones